# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

2016 JUL 25 AM 10: 18

COURT OF APPEALS DIV 1
STATE OF WASHINGTON

FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73333-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCO BAILON WENCES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

VERELLEN, C.J. — Marco Wences appeals his conviction for possession of methamphetamine with intent to manufacture or deliver. He contends the court erred in failing to suppress all of his statements to police and in imposing a firearm enhancement as part of his sentence. Because Wences has not carried his burden of demonstrating a basis to raise his new suppression argument for the first time on appeal and because he may not benefit from prospective changes in the law governing enhancements that occurred during a decade-long sentencing delay caused by his flight, we affirm.

## FACTS

Based on evidence obtained in a search of Wences' car and a subsequent interrogation, the State charged him with possession of methamphetamine with intent to manufacture or deliver. The information alleged that Wences was armed with a firearm when he committed the offense.

Prior to trial, Wences moved to suppress his statements to police. At the suppression hearing, Officer Bruce Bosman testified that he obtained a warrant to search Wences and his Toyota Corolla after a confidential informant indicated Wences was selling methamphetamine.

On September 9, 2003, Officer Bosman spotted the Toyota and pulled it over. He informed Wences, the driver, of the search warrant. He advised him of his rights to remain silent and to an attorney and then commenced questioning. When Officer Bosman asked if there was a gun in the car, Wences said there was, but claimed it was not his.

After this initial questioning, Officer Bosman detained Wences in his patrol car and searched the Toyota. He found methamphetamine, a firearm, and a substantial amount of cash. Officer Bosman then arrested Wences and read him complete Miranda[1] warnings, including a warning that anything he said could be used against him in court. Officer Bosman proceeded to ask Wences additional questions, and Wences made additional incriminating statements.

In the suppression hearing, Wences testified that Officer Bosman gave him full Miranda warnings, including a warning that anything he said could be used against him in court, before each period of questioning. He claimed, however, that he requested an attorney and did not answer any questions. Neither party mentioned the then-recent decision in regarding improper two-step interrogations,[2] nor did Wences argue that Officer Bosman had used an improper two-step interrogation.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1996).

[2] Missouri v. Seibert, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004).

The court granted the motion to suppress in part, ruling that Wences' "initial statements . . . made prior to being advised of . . . full constitutional rights" were not admissible.[3] The court also ruled, however, that Wences' subsequent statements "made after advisement of constitutional rights" were voluntary and admissible.[4] The court expressly found Wences' claim that he requested an attorney "not credible."[5]

After trial, the court gave the jury a special verdict form asking whether Wences was "armed with a deadly weapon at the time of commission of the crime."[6] The court instructed the jury that, for purposes of the special verdict, the State had to prove "that the defendant was armed with a *deadly weapon* at the time of the commission of the crime" and that "[a] pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.[7] The jury answered "yes" to the special verdict question and convicted Wences as charged.

Wences did not appear for his initial sentencing in 2004 and was not sentenced until 2015. The court imposed 100 months of confinement, including a 36-month firearm enhancement.[8] Wences appeals.

---

[3] Clerk's Papers at 54.

[4] Id.

[5] Id. at 53.

[6] Id. at 30.

[7] Id. at 50 (emphasis added).

[8] See former RCW 9.94A.510(3)(b) (2001) (recodified as RCW 9.94A.533 by LAWS OF 2002, ch. 290, § 11 (three-year firearm enhancement for class B felonies and crimes with maximum sentence of 10 years)).

## DECISION

For the first time on appeal, Wences contends his post-Miranda statements should have been suppressed as the product of an impermissible two-step interrogation under Missouri v. Seibert.[9] Under Seibert, courts must suppress post-Miranda statements if police *deliberately* attempted to undermine Miranda warnings by using a two-step process in which initial unwarned statements were used to obtain post-warning statements.[10] We do not reach Wences' Seibert claim because he fails to carry his burden of demonstrating a valid basis to raise it for the first time on appeal.

"As a general rule, appellate courts will not consider issues raised for the first time on appeal."[11] An appellant waives a suppression issue if he or she failed to move for suppression on the same basis below.[12] Wences concedes he did not assert any argument under Seibert below. He argues, however, that the issue involves manifest constitutional error that may be raised for the first time on appeal under RAP 2.5(a)(3). We disagree.

To establish manifest constitutional error, a defendant must demonstrate constitutional error and "show how the alleged error actually affected [his] rights at

---

[9] 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004).

[10] State v. Rhoden, 189 Wn. App. 193, 199-203, 256 P.3d 242 (2015).

[11] State v. McFarland, 127 Wn.2d 322, 332–33, 899 P.2d 1251 (1995); RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

[12] State v. Garbaccio, 151 Wn. App. 716, 731, 214 P.3d 168 (2009) ("Because [the defendant's] present contention was not raised in his suppression motion, and because he did not seek a ruling on this issue from the trial court, we will not consider it for the first time on appeal.").

4

trial."[13] "It is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review."[14] When a suppression issue is raised for the first time on appeal, however, the record may be insufficient to show actual prejudice because neither the defendant nor the State had the incentive or opportunity to develop the factual record before the trial court.[15]

Here, the State contends Wences cannot establish manifest constitutional error because his failure to raise his Seibert argument below leaves this court with an insufficient record to determine whether the interrogating officer *deliberately* employed an improper interrogation. The State notes that

> [i]n deciding whether an improper two-part interrogation took place, the court is to take into consideration subjective evidence, such as an officer's testimony. [State v.] Hickman, 157 Wn. App. [767,] at 775[,] 238 P.3d 1240 (2010)]. Because the issue was not raised below, the testimony of the officer as to his reason for giving the partial warnings is not available. Furthermore, the defendant testified that he was advised of more rights than the officer remembered giving him. The court did not enter findings with regard to the defendant's testimony. Had the court been alerted to the issue at the trial level, it could and likely would have entered findings specific to that issue.[16]

Wences chose not to respond to the State's argument, resting instead on a conclusory statement in his opening brief that "the record is adequate."[17] This is insufficient.

---

[13] State v. Kirkman, 159 Wn.2d 918, 926–27, 155 P.3d 125 (2007).

[14] Id. at 927 (citing McFarland, 127 Wn.2d at 333).

[15] See McFarland, 127 Wn.2d at 333.

[16] Br. of Resp't at 9.

[17] Appellant's Br. at 10.

It is the appellant's burden to establish the grounds for reviewing an issue for the first time on appeal.[18] Considering that the test for whether a two-step interrogation occurred involves consideration of all objective *and subjective* evidence bearing on the interrogating officer's intent,[19] and given the absence of any testimony from the interrogating officer on that point, there is not an adequate record to analyze Wences' two-step interrogation theory. Wences fails to carry his burden of demonstrating manifest constitutional error.[20]

Citing State v. Williams–Walker,[21] Wences next contends the court erred in imposing a three-year firearm sentence enhancement because the jury's special verdict only found that he was armed with a "deadly weapon." If the decision in Williams-Walker and its predecessor, State v. Recuenco,[22] applied to this case, Wences' argument would have merit. The courts in those cases held that a sentencing court is authorized to impose only the specific enhancement found by the

---

[18] State v. Grimes, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011).

[19] State v. Hickman, 157 Wn. App. 767, 775, 238 P.3d 1240 (2010).

[20] Although we do not reach the merits of Wences' argument under Seibert, we note that when, as here, post-warning statements follow statements made after attempted but incomplete warnings, there is little reason to believe that police deliberately tried to undermine Miranda. As one court noted in addressing facts similar to those presented here, "Because giving any warnings undermines the effectiveness of the 'question first' tactic, the fact that some warnings were given *strongly evidences* that the tactic was not being used." United States v. Street, 472 F.3d 1298, 1314 (11th Cir. 2006) (emphasis added); see also Hill v. Thaler, 484 Fed. App'x. 888, 890 (5th Cir. 2012) ("any argument that the officer employed a deliberate strategy is undermined by the fact that a partial reading of Miranda rights was given."); Fed. R. App. P. 32.1(a) (permitting citation to unpublished federal decisions issued in 2007 or later). It is undisputed that Officer Bosman informed Wences of his rights to remain silent and to an attorney before the initial questioning.

[21] 167 Wn.2d 889, 897-98, 225 P.3d 913 (2010).

[22] 163 Wn.2d 428, 180 P.3d 1276 (2008).

jury.[23] Accordingly, a jury determination that the defendant was armed with a deadly weapon does not authorize a court to impose a firearm enhancement, and imposition of the latter is not subject to harmless error analysis.[24] But Williams-Walker and Recuenco are not retroactive and therefore do not apply to judgments and sentences that were final when they were decided in 2008 and 2010.[25] While Wences' judgment and sentence was not final until 2015, it would have been final prior to both Recuenco and Williams-Walker but for Wences' flight and the consequent 11-year delay of his sentencing. A defendant should not benefit from changes in the law that apply to him solely because he absconded and delayed his sentencing.[26]

---

[23] Williams-Walker, 167 Wn.2d at 898-99.

[24] Id. at 898-901.

[25] In re Pers. Restraint of Netherton, 177 Wn.2d 798, 802, 306 P.3d 918 (2013).

[26] See State v. Moore, 63 Wn. App. 466, 470-71, 820 P.2d 59 (1991) (rejecting defendant's argument that all of his sentences should have run concurrently because he absconded to avoid sentencing on some of the offenses and "[b]y doing so, he prevented those sentences from being entered when they normally would have been. . . . To order the [sentences] to run concurrently . . . would in effect reward [the defendant]" for absconding); State v. Sills, 260 Or. App. 384, 388-94, 317 P.3d 307, 309-12 (2013) ("we find it significant that . . . one of defendant's challenges to his conviction would be affected—indeed benefited—by case law that has developed since he absconded. . . . Absent defendant's flight from Oregon, he would have been sentenced in 2000, and any appeal relating to that judgment would have been governed by the law as it existed at that time. In all likelihood, an appeal at that time would have resulted in a different outcome on defendant's first assignment of error . . . . Under those circumstances, we conclude that defendant's lengthy escape from justice significantly interfered with the appellate process and forfeits his appeal."); State v. Ristick, 204 Or. App. 626, 631, 131 P.3d 762 (2006) (dismissing appeal of defendant who fled before sentencing because the challenge to his sentence rested on a case decided during his flight and entertaining the argument "would allow defendant to benefit from flouting the judicial process and leave others undeterred from doing the same").

Because the jury's deadly weapon finding was sufficient to authorize Wences' firearm enhancement under the laws in effect at the time of his conviction (prior to Recuenco and Williams-Walker)[27] and because Wences cannot benefit from subsequent changes in the law, the court did not err in imposing the firearm enhancement.

The conviction and sentence are affirmed.

WE CONCUR:

_____
Cox, J.

_____

---

[27] In re Pers. Restraint of Jackson, 175 Wn.2d 155, 163-64, 283 P.3d 1089 (2012).